**LICATA & CO. INC., Plaintiff,**

v.

**Seymour GOLDBERG and Total Dollar Management Effort Ltd., Defendants.**

**No. 92 Civ. 9209 (VLB).**

United States District Court, S.D. New York.

Feb. 1, 1993.

---

Alan M. Simon, Suffern, NY, for plaintiff.

Farrell, Fritz, Caemmerer, Cleary, Barnosky & Armentano, Uniondale, NY, for defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

Plaintiff Licata & Co. Inc. ("Licata") is a firm which entered the insurance agency business utilizing assistance of the defendant Seymour Goldberg ("Goldberg"), who has since left Licata and gone to work with the defendant Total Dollar Management Effort Ltd. ("Total"), which also engages in insurance brokerage. Licata contends that

under its arrangement with Goldberg, identities of all customers developed or serviced by Goldberg while at Licata were exclusively the property of Licata and that Goldberg took customer lists from Licata.

The jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1331 based on a claim under 15 U.S.C. § 1125(a), the Lanham Trademark Act's prohibition of false representations and descriptions in commerce, and a claim for unfair competition pursuant to 28 U.S.C. § 1338.

Licata, proceeding by Order to Show Cause, seeks a preliminary injunction barring defendants from "making false and misleading representations and descriptions of the conduct of the plaintiff's business and from using the plaintiff's customer lists and books and conducting any other acts of unfair competition in connection therewith"; and requiring defendants to "deliver up for impoundment during the pendency of this action all customer lists, books or the like belonging or originating with the plaintiff in their possession or under their control ..."

An affidavit of Randi Frascella, an employee of Licata, states that Goldberg had copied what she believed to be confidential customer information from Licata files. There is no contention that Goldberg took original files without returning them.

Aurealius J. Licata, president of the corporate plaintiff, has also filed an affidavit stating that it "was understood" that customers obtained by Goldberg while at Licata "would be and remain" customers of Licata & Co. Inc., but no time, place, or details concerning any conversations had to that effect are furnished and no one else appears to have been present when such understanding was reached.

The identities of the customers and the types of insurance involved are claimed as trade secrets, but no specific means used to protect their secrecy are outlined. It appears to be undisputed that Goldberg was responsible for developing Licata's business with the insurance customers involved, so that while copies of papers Goldberg prepared or worked with while at Licata might be helpful to Goldberg in approaching his former contacts, Goldberg could presumably have retrieved the identities of the customers somewhat more laboriously from other sources, and were his memory impeccable he would have needed no copies of Licata files to get in touch with them. No written agreement concerning post-employment competition or restricting Goldberg's approach to any customers he recruited while at Licata appears to have been prepared or signed.

Mr. Licata also avers that customers have told him that Goldberg had indicated in oral conversations with them that Licata could no longer service insurance needs and was not qualified to handle their business. No indication has been provided that the individual one-to-one conversations described by this hearsay were in or affecting interstate transactions or whether they took place with new prospects or persons Goldberg already knew.

While Licata seeks a preliminary injunction based on its affidavits, no offer of proof concerning what further information could be furnished is included in its papers. No information concerning the transmission of the alleged false statements in commerce has been provided.

For the reasons which follow, I deny the motion for a preliminary injunction.

## II

Several factual issues concerning the relationship of the parties are presented by the application as submitted by Licata, including the following:

(a) Whether the alleged representations on the part of Goldberg concerning Licata were in fact made and were in fact false, and if so whether they were in commerce; and

(b) Whether customers recruited by Goldberg are part of his personal business acquaintanceship developed through his own efforts without any commitment not to contact them if Goldberg left Licata, and which Goldberg may hence use at another job, or whether there was an enforceable agreement that Licata would retain exclusive rights to contact such customers.

■ While the test for granting a preliminary injunction has been often restated, its core has changed little in recent decades. In order to secure a preliminary injunction, a movant must, barring circumstances not involved here, establish (a) irreparable harm and (b) either likelihood of success on the merits, or fair ground for litigation and a balance of hardships tipping decisively in favor of the movant. *Jackson Dairy v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir.1979); see Silberman, *Injunctions by the Numbers: Less Than the Sum of Its Parts*, 63 Chi–Kent L.Rev. 279 (1987).

■ There are reasons why an injunction may be a preferred method of resolution in specific circumstances, which may affect the application of the *Jackson* test. Where events with irrevocable effects which are difficult to unscramble are imminent, quick resolution on the merits is crucial to those involved. This may be true, for example, in certain corporate control controversies, as outlined in *Piper v. Chris–Craft Industries*, 430 U.S. 1, 42, 97 S.Ct. 926, 949–50, 51 L.Ed.2d 124 (1977), quoting *Electronic Specialty Co. v. International Controls*, 409 F.2d 937, 947 (2d Cir.1969); see Laycock, *The Death of the Irreparable Injury Rule*, 103 Harv.L.Rev. 687 (Jan.1990).

Similarly, the risk of monetary liability may in certain kinds of situations chill otherwise desirable behavior, leading courts or legislative bodies to opt for injunctive enforcement as the primary or sole method of enforcing applicable requirements. See *Gwaltney v. Chesapeake Bay Foundation*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). In still other cases, damage awards are problematic because of the potential for multiple claims, whereas injunctive relief meets with no such barrier and is hence preferred where justified. See *Mid–West Paper Products Co. v. Continental Group*, 596 F.2d 573 (3d Cir.1979). No circumstances of any of these or related types have been claimed or shown here.

■ Irreparable injury has not been shown. Total appears to be solvent and able to respond in damages if any actionable injury is shown. Nor do damages appear incalculable, see *Triebwasser & Katz v. AT & T*, 535 F.2d 1356, 1359 (2d Cir.1976). There is no indication that the alleged improper behavior is putting Licata out of business, which might suffice to show irreparable injury. *John B. Hull, Inc. v. Waterbury Petroleum Products*, 588 F.2d 24, 29 (2d Cir.1978), *cert. denied*, 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773 (1979).[1]

■ Licata has also failed to show probability of success on the merits. No proof beyond generalities has been offered that Licata's contentions accurately describe the facts. Nor has any request for an evidentiary hearing to establish those facts by testimony been made; there is an absence here of any offer of proof as to what witnesses would be called at such a hearing if requested, and what they would be expected to testify to in order to establish adequate support for the injunction sought.

■ Licata has also failed to satisfy the alternative second branch of the *Jackson* test. Even assuming that irreparable injury had been established, and assuming without deciding that fair ground for litigation has been shown, the equities do not tip toward Licata. On the contrary, if a prohibitory injunction had the effect of preventing transactions which would otherwise occur on the merits at the instance of the customer, whichever insurance agency was entitled to the benefit of those transactions the parties as a group would lose. On the other hand, if such transactions occurred at the expense of Licata's rights, it could be compensated for by a money judgment.

Further, as discussed below in connection with Licata's proposed remedy, a preliminary injunction merely barring improper conduct would not give any certainty of protection to Licata, since misconduct on the part of Goldberg and Total is disputed; such an injunction would invite contempt

---

1. Although this point is not decisive, Licata's insurance business appears to have been an extension of its former activities.

litigation since its application to the behavior of the parties to be enjoined would remain in dispute.

## III

Licata has failed to establish the appropriateness of its reliance on the Lanham Act as a basis for injunctive relief or as the prerequisite for sustaining its unfair competition claim under 28 U.S.C. § 1338.

■ The Lanham Act's antideception provision (15 U.S.C. § 1125[a]) in its present form, designed among other things to bar misleading commercial advertising, would be trivialized if it were applied to statements in oral conversations by an individual sales representative to an individual customer concerning matters which an ordinary listener would recognize as personal opinion as opposed to representations of hard definable facts, such as product descriptions. See *Brignoli v. Balch Hardy and Scheinman, Inc.*, 645 F.Supp. 1201, 1209 (S.D.N.Y.1986).

■ Robust debate between competitors on matters of opinion, and claims that one product or service is far superior to that of rivals, are encouraged as part of the hurly-burly inherent in a free market system, and indeed an open society.[2] The deceptive potentialities of alleged misstatements balanced against the restrictive impact of prior restraint on freedom of commercial speech[3] must be evaluated—especially on an application for preliminary restraint to be imposed prior to trial—based on the probable impact on those to whom the speech is are directed. See Friendly, J., in *Proceedings in Memoriam of Hon. Paul R. Hays*, 635 F.2d at LXXI (1981). Where a hard, verifiable statement is made which is capable of scientific, accounting or other specific verification, courts and agencies can assume that the recipient of the communication will treat the statement as including an implicit representation that such verification has been made; misstatements cannot be protected by ambiguities relied upon as defenses. *American Home Products Corp. v. Johnson & Johnson*, 577 F.2d 160 (2d Cir.1978).

Where, by contrast, a statement of personal opinion on a nonverifiable matter is made, the recipient is likely to assume merely that the communicator believes the statement; a business acquaintance who has done business with the speaker will probably be better situated to evaluate the statement and the bias of the speaker than a court on a preliminary injunction application.[4]

■ An application for a preliminary injunction is committed to the sound discretion of the court. With respect to such application, isolated individualized oral comments about competitors are at the opposite pole from clearly definable media advertising or printed material containing specific verifiable or disprovable statements and given wide distribution in commerce. In the latter situation, both certainty concerning what is said (if not always concerning its truth) and the strength of the probable impact are more readily established or foreseen, permitting interim relief. See generally *U.S. Healthcare v. Blue Cross*, 898 F.2d 914 (3d Cir.), *cert. denied*, 498 U.S. 816, 111 S.Ct. 58, 112 L.Ed.2d 33 (1990).

## IV

■ Apart from the question of the deceptiveness of whatever statements Goldberg may have made, the interstate commerce requirements of the Lanham Act's advertising provisions (15 U.S.C. § 1125(a)) cannot be ignored. Although the requirements are substantive and not

2. See Nye, *In Defense of Truthful Comparative Advertising*, 67 Trademark Rep. 353 (1977); Note, 36 Cath.U.L.Rev. 565 (Winter 1987); 16 CFR § 14.15.

3. Commercial advertising can, of course, be regulated to the extent necessary to protect the public but is entitled to recognition as important to First Amendment values. For an early analysis, see Reich, *Consumer Protection and the First Amendment*, 61 Minn.L.Rev. 705 (1977).

4. Committee on Labor Law, Federal Bar Council, *Problems of Defamation and Freedom of Expression in Labor Relations*, 23 Indus. & Lab. Rel.Rev. 101 (Oct.1989).

phrased in jurisdictional terms, their presence is a prerequisite for relief under the Act.[5]

The federal interstate commerce power extends to conduct which even in the aggregate affects commerce among the several states. See *Russell v. United States*, 471 U.S. 858, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985); *Polish National Alliance v. NLRB*, 322 U.S. 643, 64 S.Ct. 1196, 88 L.Ed. 1509 (1944); *Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942); *NLRB v. Fainblatt*, 306 U.S. 601, 59 S.Ct. 668, 83 L.Ed. 1014 (1939); *United States v. Ricciardi*, 357 F.2d 91 (2d Cir.), *cert. denied*, 384 U.S. 942, 86 S.Ct. 1464, 16 L.Ed.2d 840 (1966).

The Lanham Act's reach, while long, does not extend to the full outer limits of the commerce power. Its plain meaning—the Lanham Act utilizes the term "in commerce" rather than "affecting commerce" or the even broader "industry affecting commerce"—reflects a legislative judgment that for the statute to apply, the questioned advertising or statements, and not merely the underlying commercial activity, must be disseminated in commerce—i.e., not be purely local. See *Arrow United Industries v. Hugh Richards, Inc.*, 678 F.2d 410, 413 n. 5 (2d Cir.1982). No effort to meet the commerce requirement appears to have been made here.

If the only federal claim present in this case must fall because of failure to establish conduct in commerce violative of the Lanham Act, retention of the pendent state claim under 28 U.S.C. § 1338 is, of course, called into question. These barriers to Licata's success on the merits militate against granting preliminary relief.

## V

Customer information and customer lists can constitute trade secrets. See Silberberg & Lardiere, *Eroding Protection of Customer Lists and Customer Information Under the Uniform Trade Secrets Act*, 42 Bus.Law. 487 (Feb.1987). Trade secrets are protected from misappropriation through breach of faith by common law and state statutory provisions implementing the common law and of generally uniform nature, with variations not relevant or in dispute here. Unlike patents, trade secrets are not protected from use by others absent such breach or knowingly taking advantage of such breach by others. See generally Restatement of Torts § 757 & comment b (1939 ed).

The only showing of Goldberg's use of information concerning work in which he was the leading actor while at Licata is a conclusory statement that it was "understood" that any customers would remain with Licata. Even were an oral or written agreement established that Goldberg would not solicit customers he had developed while at Licata, the reasonableness of its enforcement after Goldberg's departure would have to be established. See *American Institute of Chemical Engineers v. Reber–Friel Co.*, 682 F.2d 382 (2d Cir.1982); Liebman & Nathan, *Enforceability of Post–Employment Competition Agreements Formed After At–Will Employment Has Commenced*, 6 So.Cal.L.Rev. 1464 (1987).

Depending on circumstances not set forth in Licata's affidavits, it may or may not turn out that Licata's ability to retain customers recruited by Goldberg rather than by others at Licata counterbalances Goldberg's post-employment ability to solicit those customers to an extent which would make a ban on Goldberg's solicitation an unreasonable restraint on his ability to ply his trade or earn a living. See generally *Winston Research Corp. v.*

---

**5.** Where a claim purports to be made under a federal statute, the court has jurisdiction to rule upon it unless it is entirely frivolous, even if jurisdiction must be exercised to dismiss the claim. *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); see also *Hagans v. Lavine*, 415 U.S. 528, 537–42, 94 S.Ct. 1372, 1379–82, 39 L.Ed.2d 577 (1974).

Since it is possible that notwithstanding the denial of Licata's motion for a preliminary injunction and the weakness of its allegations under the Lanham Act, Licata may be able to overcome those weaknesses, I do not dismiss *sua sponte* for lack of jurisdiction. Compare *Crowley Cutlery Co. v. United States*, 849 F.2d 273 (7th Cir.1988).

**410**

*Minnesota Mining & Mfg. Co.*, 350 F.2d 134, 137–38 (9th Cir.1965). Absence of a written document containing an explicit clause which one might perhaps expect to find if it had been agreed that a party who recruits customers cannot contact them after leaving employment,[6] though far from decisive, sheds additional doubt on Licata's claim that it has made the factual showing necessary to support a preliminary injunction.

■ Trade secrecy protection also requires that, absent particularly clear outrageousness in the conduct of the defendant, the information involved must be kept secret from others generally through precautions adequate under the circumstances to show that the owner of the secret treated it as such. See generally *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226 (Fed.Cir. 1989).

■ The prevailing criteria for finding a trade secret were set forth as follows in *Integrated Cash Management v. Digital Transactions*, 920 F.2d 171, 173 (2d Cir. 1990), quoting *Eagle Comtronics v. Pico*, 89 A.D.2d 803, 803–04, 453 N.Y.S.2d 470, 474 (4th Dep't 1982), also quoting Restatement of Torts § 757, comment b:

"(1) the extent to which the information is known outside [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken … to guard the secrecy of the information; (4) the value of the information to [the holder] and … competitors; (5) the amount of effort or money expended … in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others."

While Licata may or may not ultimately be able to show that it has met the criteria for trade secrecy or similar protection, no such showing adequate to support a preliminary injunction has been made here.

**VI**

■ The injunction currently sought by Licata could not properly be granted in any event because its content is sufficiently vague to make its application highly uncertain.

Licata's first request in paragraph (A) of its Order to Show Cause, p. 2 is for a prohibition of "false and misleading representations and descriptions of the conduct of plaintiff's business." Merely prohibiting what is already improper would add nothing to Licata's protection except to transform what would otherwise be a potential lawsuit on the merits into a contempt application. Moreover, it is unclear whether entry of such an order would entail a presupposition that statements already claimed to have been made by Goldberg were in fact made or were erroneous. If such an order were entered, it would thus be ambiguous, having a chilling effect on potentially legitimate competition, and would create difficult problems of enforcement.

The second aspect of paragraph (A) seeks to prohibit defendants from "using the plaintiff's customer lists and books and conducting any other acts of unfair competition in connection therewith …" This provision assumes, without asking the court to decide, that customer identities developed by Goldberg while at Licata are Licata's exclusive property. It then further assumes, without providing explicitly, that barring use of the lists will preclude defendants' use of the names even if recalled from memory or reconstructed. Here too, the seemingly benign truism embedded in the proposed order that one's property should not be used by others obscures unarticulated assumptions without which the injunction would have no bite. The proposed ban on "other acts of unfair competition" on the one hand assumes without making a finding that defendants' prior conduct constituted unfair competition, and on the other, bars unspecified future conduct, thereby transforming the

---

6. Compare *Alan Skop, Inc. v. Benjamin Moore, Inc.*, 909 F.2d 59 (2d Cir.1990); *Eastern Air* *Lines, Inc. v. Air Line Pilots Ass'n*, 861 F.2d 1546, 1552 (11th Cir.1988).

remedy for such conduct into a contempt application.

Paragraph (B) of the proposed injunction seeks to impound materials "belonging to or originating with the plaintiff," thereby suggesting without stating that information developed by Goldberg while at Licata exclusively belongs to Licata if "originating with" it. The proposed order also raises the question of whether only originals, or also any copies made of papers containing names of persons contacted by Goldberg while at Licata, are items which would be deemed "belonging" to Licata.

Fed.R.Civ.P. 65(d) requires that an order granting an injunction "be specific in terms" and "describe in reasonable detail ... the act or acts sought to be restrained ..." See *Schmidt v. Lessard,* 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974). Injunctions with the degree of vagueness and ambiguity of that requested by Licata do not meet this standard and are inappropriate. See *Fonar Corp. v. Deccaid Services, Inc.,* 983 F.2d 427 (2d Cir.1993); *Kasper v. Board of Election Comm'rs,* 814 F.2d 332 (7th Cir.1987); *Georgevich v. Strauss,* 772 F.2d 1078 (3d Cir.1985) (en banc), *cert. denied,* 475 U.S. 1028, 106 S.Ct. 1229, 89 L.Ed.2d 339 (1986).

An injunction against individual, off-the-cuff speech between acquaintances—as contrasted with media advertising which can be carefully crafted or reviewed by counsel before issuance—must be carefully limited to assure fairness and enforceability. Turning to the proposed restraint on use of customer names, before injunctive implementation of express or implied contractual commitments such as those urged by Licata can be made sufficiently definite, the underlying contractual commitments and their interpretation must be susceptible of clear definition. Otherwise the resulting injunction will not meet the requirements of Fed.R.Civ.P. 65. See *Ass'n of Flight Attendants v. United Airlines,* 976 F.2d 102 (2d Cir.1992). This requirement is very far from being met here, where individual post-employment use of individually obtained contacts are sought to be barred based on an undefined inferential understanding founded on unspecified oral conversations.

SO ORDERED.