**NORTHWEST STRATEGIES, INC., et al., Plaintiffs,**

v.

**BUCK MEDICAL SERVICES, INC., et al., Defendants.**

No. C95–5084FDB.

United States District Court,
W.D. Washington.

May 3, 1996.

Joel Cartwright Merkel, John C. Merkel, Caine & McLaughlin, Seattle, WA, and James C. Harrison, Harrison, Benis & Spence, L.L.P., Seattle, WA, for Northwest Strategies, Inc. and Ron Dotzauer.

Charles E. Corrigan, Portland, OR, for Buck Medical Services, Inc. and American Medical Response Northwest Inc.

## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

BURGESS, District Judge.

### INTRODUCTION

This matter comes before the court upon the Plaintiff's Motion for Summary Judgment. This case arises from a Request for Proposals (RFP) from Clark County, Washington for an ambulance provider to handle, at a minimum, 911 emergency ambulance calls. Bidders' proposals were due May 1, 1992 with an interim contract to be commenced July 1, 1992. Responses to the RFP were to include a showing of how the bidder would go about implementing a "subscription membership" program in Clark County, including the removal of legal barriers to such a program. A subscription membership program would allow ambulance patrons to subscribe for ambulance service for an annual fee, and no further payments would be required for service over the amount of the annual fee. In Washington, such subscription services are considered "insurance," and ambulance companies may not offer them.

Clark County's RFP came about after an antitrust lawsuit filed by Buck Medical Ser-

vices, Inc. (Buck) (defendant herein) against Clark County, several of its agencies, and the City of Vancouver challenging the then arrangement whereby 911 emergency calls requiring an ambulance were referred primarily to CARE Ambulance, a competitor of Buck. A court-approved settlement agreement resulted whereby Clark County agreed to conduct a competitive bid process for emergency ambulance service in Clark County.

Buck and CARE both responded to Clark County's RFP. Buck was the successful bidder.

The "Subscription Membership Program" section of Buck's bid proposal, as well as Buck's reference to this Program in its oral presentation, refer to Northwest Strategies' (NWS) "Proposal for Legislative Services Prepared For Buck Medical Services." These references by Buck to NWS and Ron Dotzauer form the basis for Plaintiffs' claims.

Problems developed, NWS was never hired by Buck, and the subscription membership program did not become a reality. A review by Clark County Department of Emergency Services indicated that while Buck showed a 96.7% compliance in meeting all Interim Contract obligations, there still was no subscription membership program in force. Buck was held to be in "technical default" on that issue, but the County (the Financial Oversight Board (FOB)) noted:

> The FOB recognizes that Buck has not been idle at trying to implement the membership program. On March 31, 1993, Buck reported it chose not to use the private consulting firm due to difficulty in obtaining legislative sponsorship. Buck stated it would pursue becoming a limited health care contractor in order to offer the program. In addition, Buck signed a contract on January 15, 1994, with Mr. Chuck Williams of Brims–Williams Associates for work during the 1994 and 1995 legislative sessions.

(Ex. 4 to Bradshaw decl.) Further review was scheduled.

Plaintiffs claim (1) violation of the Lanham Act, 15 U.S.C. § 1125(a) (False designations of origin and false descriptions forbidden);

(2) violation of Washington's Consumer Protection Act, RCW Chapter 19.86.; (3) common law misappropriation; (4) common law unfair competition; and (5) quasi contract or unjust enrichment.

Plaintiffs move for summary judgment on the first two claims, the alleged Lanham Act and RCW 19.86.020 violations.

## LANHAM ACT CLAIM

Plaintiffs have failed to make out their Lanham Act claim. First, they have failed to show they meet the jurisdictional "use in commerce" element, have failed to make any showing on the damage element, and there are material issues of fact.

Title 15 U.S.C.S. § 1125 (amendment effective November 16, 1989), entitled False designations of origin and false descriptions forbidden, provides in pertinent part as follows:

(a) **Civil action.** Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, ... or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, ...

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Plaintiffs assert in their motion that Buck misleadingly described or represented to the Clark County Emergency Medical Services District # 2 (the District) that the Plaintiffs were affiliated or associated with Buck in connection with Buck's bid proposal to the District. Plaintiffs assert that Buck used the NWS' trade name, Dotzauer's personal name, and NWS' written proposal to Buck as part of Buck's written ambulance service bid, and Buck represented that NWS had been retained by Buck as of the date of the proposal when that representation was false. Plaintiffs conclude that Buck's misleading representation confused, misled or deceived the District.

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The language of the Lanham Act provides the elements that Plaintiffs must prove on summary judgment.

(1) **"Any person who, on or in connection with any goods or services...."** The alleged violation must be in connection with goods or services. Here it is alleged that Buck committed its violation, in connection with the "Subscription Membership Program" portion of its proposal to Clark County where Buck referenced Ron Dotzauer and Northwest Strategies' plan for lobbying state government officials:

**Regulatory Intervention.** Buck's commitment to the program also includes an intelligent, aggressive approach to the Washington State Legislature. We are generating support from key political groups to work with the consulting firm of Northwest Strategies in order to achieve a rapid victory on this public issue. Mr. Ron Dotzauer, a principal in Northwest Strategies, has included an organized plan for lobbying the state government officials. A copy of that strategy is attached for your inspection.

The referenced strategy is on NWS letterhead and is entitled: "Proposal For Legislative Services Prepared For Buck Medical Services." Thus, a violation with respect to NWS's proposed "legislative services" is at issue.

(2) **"... uses in commerce...."** The next question is whether the alleged violation has occurred "in commerce" for purposes of the Lanham Act. The definition of "commerce" is contained in 15 U.S.C.S. § 1127 (Construction and definitions; intent of chapter): "The word 'commerce' means all commerce which may lawfully be regulated by Congress." Article I, Section 8 of the United States Constitution provides that Congress shall have the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."

Buck is an Oregon corporation and a subsidiary of a national ambulance corporation, American Medical Response, Inc. NWS is a Washington corporation doing business primarily in Washington, but also in Oregon through an affiliated corporation, and in Alaska, Idaho, and Washington, D.C. The status of the parties with respect to the scope of their business is not the critical factor, however. The statute is concerned with the use in commerce of false or misleading representations. In *H & R Industries, Inc. v. Kirshner*, 899 F.Supp. 995 (E.D.N.Y.1995), the Court explained:

> "It is understood that '[t]he Lanham Act's reach, while long, does not extend to the full outer limits of the commerce power.'" *Licata & Co., Inc. v. Goldberg*, 812 F.Supp. 403, 409 (S.D.N.Y.1993). Rather, '[i]ts plain meaning ... reflects the legislative judgment that for the statute to apply, *the questioned advertising or statements, and not merely the underlying commercial activity, must be disseminated in commerce.'* *Id.; see also Arrow United Industries v. Hugh Richards, Inc.*, 678 F.2d 410, 413 n. 5 (2d Cir.1982) ("Congress's expressed intent in passing the Lanham Act was, *inter alia*, 'to regulate commerce within the control of Congress.'") (Emphasis added.)

*Id.* at 1004. The Court illustrated the problem faced by Plaintiff in the above case that is similar to the case at bar:

> Without evidence to the contrary, the Court may find that defendant's alleged statements to Lamaj, a Manhattan building manager, were made entirely within New York. Even if the parties engaged in interstate commerce, or their business activities affected interstate commerce, the statements may not have been disseminated in commerce. Thus, the Lanham Act may well not apply in this instance.

*Id.* There is no unresolved factual issue on this point in the case at bar. The violation alleged by NWS involves a statement in a bid proposal to Clark County Emergency Services District # 2 in Washington; the statement was not disseminated in interstate commerce. Moreover, the statement at · issue was confined to dissemination only to those evaluating the bids. This case is unlike cases such as *Falcon Rice Mill v. Community Rice Mill*, 725 F.2d 336, 343 n. 5 (5th Cir.1984), where the plaintiff did business in Louisiana and Texas, but the defendant packaged rice only in Louisiana; the court pointed out that Defendant's intrastate rice sales had an impact on Plaintiff's interstate commerce. This is a classic case. One can understand the potential for such interstate impact if a local manufacturer sells rice in trade dress similar to that of another doing business in interstate commerce. The local seller could obtain sales from people who believed they were buying the interstate seller's product and the interstate seller could claim damages because of the lost sales.

In NWS's case, not only is the complained-of statement not made in commerce, the potential effect on NWS' interstate commerce by Buck's reference to the NWS proposal in its bid is extremely attenuated: NWS might or might not get the business it outlined in its proposal. This effect is negligible because the proposal was for work that was purely intrastate and the alleged improper association was disseminated only to bid reviewers for Clark County Emergency Medical Services District # 2.

The ambulance services offered by Buck are not the focus of the inquiry, because the statutory language does not focus on the goods or services that are being offered in interstate commerce but on the designation, description, or misrepresentation, commonly an advertisement, being used in interstate commerce. Here, the focus must be on the alleged representation that NWS was associated or affiliated with Buck in connection with Buck's bid proposal.

Neither is the Interim Contract the focus, as it is the end result of the acceptance of the bid and allowed Buck to provide "paramedic ambulance service" throughout the "Private Service Area." (Interim Contract, ¶ II.) By accepting Buck's bid, the Clark County EMS District was designating Buck as the single provider of ambulance services in the District and was allowing Buck to charge user fees to its customers; the County was not purchasing either the ambulance service or the legislative services.

The unpublished case cited by Plaintiff would not be appropriate for citing herein, and it should also be noted that the circum-

stances in that case, where the defendant would be hired by the public entity to provide engineering services, differ from that with NWS where there is no buy/sell commercial relationship between Buck and the County EMS District.

■ (3) "... any ... name ... false or misleading description of fact, or false or misleading representation of fact...." As stated earlier, Plaintiffs allege that Buck misleadingly described or represented to the Clark County Emergency Medical Services District # 2 (the District) that the plaintiffs were affiliated or associated with Buck in connection with Buck's bid proposal to sell ambulance services to the District, and that Buck's representation that NWS had been retained by Buck as of the date of the proposal was false and misleading to the District. Again, the written reference stated as follows:

> **Regulatory Intervention.** Buck's commitment to the program also includes an intelligent, aggressive approach to the Washington State Legislature. We are generating support from key political groups to work with the consulting firm of Northwest Strategies in order to achieve a rapid victory on this public issue. Mr. Ron Dotzauer, a principal in Northwest Strategies, has included an organized plan for lobbying the state government officials. A copy of that strategy is attached for your inspection.

The oral proposal, taken from the video taped oral presentation by Buck to the evaluation panel on May 20, 1992, stated as follows:

> As you saw from our proposal we have a—offer an aggressive lobbying effort with the firm of Mr. Ron Dotsower [sic], Northwest Strategies, to help assist us, along with the county and other ambulance operations throughout the state of Washington, to secure this very beneficial program, particularly to the senior and elderly people of the county.

(Tr. 28, attached to Merkel Decl.) First, it is apparent from Buck's written proposal that NWS provided its proposal for legislative services to Buck. Buck was not trying to pass off NWS's proposal as its own, the usual case in a "palming off" situation. It is also obvious that NWS prepared the proposal for Buck; the proposal is entitled: "Proposal for Legislative Services Prepared for Buck Medical Services." In the usual case, the Plaintiff somehow stands to lose from consumer associating Plaintiff's name and reputation with another's goods or services. In this case, NWS apparently willingly associated with Buck, and Buck represented to the Clark County District that it had this proposal that was prepared by NWS, which was true. On its face, Buck did not represent that NWS had been hired, but only that there was a proposal. Indeed, Buck would have been foolish to hire NWS before knowing it had the bid.

(4) "... which—(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, ...."

■ It is difficult to see how the District could be confused by this presentation, and, indeed, David W. Sturdevant, one of the elected Clark County Commissioners, bears this out in his Declaration:

> At the time of the bid evaluation, based on Buck's proposal, I understood Buck's commitment with regard to the subscription membership program to include retaining the lobbying firm of Northwest Strategies, Inc. according to the terms of the lobbying proposal from Northwest Strategies which was incorporated into Buck's bid proposal.

(Sturdevant Decl. at 4.) He had no problem keeping NWS separate from Buck, and he knew from the proposal what Buck proposed to do and what NWS proposed to Buck it would do. Nevertheless, NWS says that it did not authorize Buck to use the proposal in its bid to the Clark County District. Evidently, the presence of the proposal in Buck's bid package is what is offensive, and the District's not knowing of its alleged unauthorized inclusion is what is misleading. Thus, while NWS was willing to prepare a proposal for Buck in the first place, Buck's inclusion of NWS' proposal in Buck's bid proposal to the District is objectionable to NWS even though Buck would have to win

the bid in order to need NWS' legislative lobbying services. However incredible or incomprehensible this contention may seem, it does create a material question of fact. Mr. Dotzauer claims not to have known about the Clark County District RFP, although he met with representatives of Buck in Portland to discuss his ability to produce a lobbying plan for the Washington legislature, and he claims to have been surprised when he first learned of the presence of his proposal in Buck's Clark County District bid from Lori Hamm, an employee of CARE Ambulance, Buck's bidding competitor for ambulance services in the Clark County District. There is other declaration testimony from representatives of Buck that Mr. Dotzauer knew about the RFP and even called Buck to congratulate them on winning the bid and inquire about the status of NWS's proposal.

(5) "... **shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."** Under the Lanham Act, a successful plaintiff is entitled to recover actual damages or profits that the defendant made from the misappropriation of the plaintiff's name, and these damages may be increased up to three times the amount of actual damages. 15 U.S.C.S. § 1117.

■ Plaintiffs assert the basis for damages as follows: unjust enrichment—because Buck obtained the value and benefit of Plaintiffs' names to enhance the likelihood of success for its bid proposal without paying. In doing so, Buck became contractually bound to the District to retain NWS. By not hiring NWS, Buck avoided that cost and avoided having to discount ambulance service rates as part of a subscription membership program.

At this point, the ill fit of the Lanham Act with Plaintiffs' claims is again demonstrated. In the usual case, a plaintiff may pray for lost profits due to diverted sales, loss of reputation, or the cost of corrective advertising. Plaintiff has not made a showing on this element, stating that it prefers to leave the issue of damages to a later phase. In this case, Buck asserts that it made no profit. (Gregg Decl. ¶¶ 3–4.) Mark Gregg, Chief Financial Officer of Buck, stated that, "The total losses for Buck's ambulance operations in Clark County are approximately $1,055,-787 for the period that the 1992 Clark County EMS contract was in effect." (Gregg Decl. p. 2.) This case does not present the type of situation where corrective advertising would be called for. At his deposition, Ron Dotzauer was questioned on the issue of his damages:

Q. ... Your lawyer said in a letter that you had been damaged or your company over a hundred thousand dollars. I'm entitled to know where these zeros come from. Where does that figure come from? What has your company lost in dollars, not in anything else, upset and disgraced, moral outrage—in dollars, what has your company lost?

A. Well, we lost the opportunity to do the business—okay?

Q. Were you promised you were going to get the business?

A. Lost the opportunity.

Q. Let me get at this one thing at a time.

A. Was I promised? No.

Q. Okay, go on, that's one thing you lost; what else have you lost—your company lost?

A. Well, what could we have lost or have lost?

Q. What have you lost, how have you been damaged?

If somebody said? "Dotzauer, I saw that thing in that page, and when I saw that, I said to myself, if that's connected with that package, I'm not going to touch you guys again."

A. Right. Right. Well, if there were a review of other competitors—okay?—you know, and that we would allow ourselves to be put in that position in advance of being hired—okay?—for a piece of business, then I think there would be other potential clients that wouldn't want to do business with us, if that's how we went about doing it. That's a possibility.

Q. Possibilities are fine. Do you have any evidence, has anybody told you anything, have you read anything? What have you seen that leads you to believe your company has been damaged over a hundred thousand dollars?

A. Nothing beyond that.

(Dotzauer Dep. at 90–92.) Plaintiffs have failed to make a showing on this element.

In summary, Plaintiffs have failed to demonstrate that there are no material issues of fact and that they are entitled to judgment as a matter of law on their Lanham Act claim.

## WASHINGTON'S CONSUMER PROTECTION ACT

Plaintiffs assert that the same facts form the basis for this claim under the RCW Chapter entitled Unfair Business Practices—Consumer Protection, known by the short title of the "Consumer Protection Act" (CPA). RCW 19.86.910. This Act provides at RCW 19.86.020:

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

Plaintiffs assert that wrongful appropriation of a trade name is a violation of RCW Chapter 19.86. And while the present motion does not address the common law claims, Plaintiffs also assert that their claims of common law unfair competition, misappropriation, and quantum meruit may form the basis of a violation of this Chapter.

The parties agree on the elements required to prove a CPA violation in this case: (1) Buck committed an unfair or deceptive act, (2) the act occurred in the conduct of trade or commerce, (3) the act has an impact on the public interest, (4) Plaintiffs suffered an injury to business or property, and (5) Plaintiffs' injury was caused by Buck's act. *Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Co.*, 105 Wash.2d 778, 719 P.2d 531 (1986).

There are problems with establishing a claim under the CPA similar to those outlined under the Lanham Act.

It is problematical under the facts whether Buck committed an unfair or deceptive act, and there is at least a question of fact on this element as discussed in the Lanham Act section above. Buck did not attempt to "appropriate" Plaintiffs' trade names as its own, and it is impossible to state on the evidence presently before the Court that Plaintiffs did not consent to their proposal being included with Buck's bid, or that Buck's bid created any confusion for the Clark County District.

The submission of a bid proposal to the District did not occur in trade or commerce: the District did not purchase anything, it chose the company it would allow to provide ambulance service and charge user fees to customers in its district.

While providing ambulance service involves the public interest, the bid procedure prerequisite to providing such service was not a consumer transaction.

Plaintiffs have provided no evidence on the claim of injury. They merely assert that the alleged wrongdoing occurred and that there is, therefore, injury. There is at least a question of fact on whether there are damages at all and whether there is any wrongdoing, as discussed in Lanham Act section above.

Finally, as to causation, as in the Lanham Act discussion above, there is no showing of any form of injury attributable to any alleged improper act of Buck.

## CONCLUSION

Plaintiffs' causes of action under the Lanham Act and the Consumer Protection Act are fatally flawed, particularly on the commerce element. There is also a dismal failure to demonstrate any damage at all to Plaintiffs that flows from the alleged misconduct of attaching the NWS proposal to Buck's bid. It may be that Plaintiffs' real complaint is that Buck did not ultimately hire NWS for the lobbying services. Whether or not there is some theory of recovery for this failure, it is demonstrably not the Lanham Act or the Consumer Protection Act.

Accordingly, it is hereby

ORDERED: Plaintiff's Motion for Summary Judgment on their Lanham Act and Consumer Protection Act claims is DENIED.