**MEDICAL GRAPHICS CORPORATION,**
**Plaintiff,**

v.

**SENSORMEDICS CORPORATION,**
**Defendant.**

**Civ. No. 3–94–525.**

United States District Court,
D. Minnesota,
Third Division.

Oct. 31, 1994.

---

Jon S. Swierzewski, Alan Marshall Anderson, Renee L. Jackson, Larkin Hoffman Daly & Lindgren, Bloomington, MN,

Michael R. Sullivan, Sullivan Walsh & Wood, Los Angeles, CA, for Medical Graphics Corp.

Jeffrey M. Olson, Hope E. Melville, Lyon & Lyon, Los Angeles, CA, Samuel D. Heins, Daniel E. Gustafson, Heins Mills & Olson, P.L.C., Minneapolis, MN, for SensorMedics Corp.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

Before the Court is Plaintiff Medical Graphics Corporation's ("Medical Graphics") Motion for a Preliminary Injunction, brought pursuant to Rule 65 of the Federal Rules of Civil Procedure. Plaintiff seeks to enjoin Defendant SensorMedics Corporation ("SensorMedics") from making false and misleading statements in the marketplace about Medical Graphics and its products which will further damage Medical Graphics' goodwill and reputation.

### Background

Medical Graphics is a Minnesota corporation headquartered in Vadnais Heights, Minnesota, which manufactures and sells medical devices. (Compl. ¶ 2.) SensorMedics, a California corporation, also manufactures and sells medical devices; SensorMedics has engaged in such business in the state of Minnesota. (Answer, ¶ 3.) The parties are competitors in the market of cardiopulmonary diagnostic equipment; SensorMedics currently holds the larger share of the market in this type of equipment. Answer, ¶ 4; Aff. of Terrance J. Kapsen, ¶¶ 2, 3. The potential customers for this equipment include hospitals, clinics, doctor's offices, research facilities and academic institutions. Decl. of William Ross, ¶ 2. This equipment is subject to regulation by the United States Food and Drug Administration ("FDA"). Kapsen Aff., ¶ 4.

Plaintiff has based its motion upon a number of incidents involving representations made by SensorMedics sales personnel to present or potential customers of Medical Graphics. SensorMedics' sales staff consists of twenty-three sales representatives, two district sales managers and two regional sales managers. Ross. Decl., ¶ 3. As part of its ongoing sales and marketing efforts, SensorMedics distributes "marketing flashes" to its sales force which contain background information on the products of SensorMedics and its competitors. *Id.,* ¶ 4. Plaintiff contends that SensorMedics' conduct has created misconceptions and caused confusion in the marketplace and has delayed purchases; plaintiff asserts that it has found it necessary to spend substantial time and resources to correct the misconceptions and confusion. The Court will discuss each of the complained of representations below.

### A. Medical Graphics and the FDA

Plaintiff contends that SensorMedics has falsely represented to Medical Graphics' present and potential customers that Medical Graphics was having difficulties with the United States Food and Drug Administration ("FDA") and that Medical Graphics' pneumotach, a key component of its equipment, was being recalled by the FDA. Aff. of Patti Wenberg, ¶ 2. A Medical Graphics sales representative averred that he has been receiving a number of questions from new customers inquiring about whether Medical Graphics was having difficulties with the FDA and whether the FDA has recalled Medical Graphics' pneumotach. Decl. of Michael Fussell, ¶ 4. The Medical Graphics sales representative does not know firsthand, however, that SensorMedics salespeople had made these suggestions to Medical Graphics potential customers.

### B. The "German" Connection

Plaintiff further contends that SensorMedics has falsely stated to a potential customer that Medical Graphics is actually a front for a German company and is in fact a German company "masquerading as an American company." Aff. of Marie Easterling, ¶ 4. The sales representative from SensorMedics who allegedly made these statements denied doing so. Decl. of Felix Perez, ¶ 3. The Court notes that quarterly financial announcements from Medical Graphics indicate that Medical Graphics has a subsidiary in

Dusseldorf, Germany. Aff. of Mindy Morales, Exh. C.

## C. Statements Regarding Cost and Performance

Plaintiff has identified in its supporting materials numerous other statements made by SensorMedics relating to the cost and performance of Medical Graphics' products which plaintiff alleges are false or misleading. A memorandum from SensorMedics stated that a Dr. Revels Cayton of the East Bay Pulmonary Laboratory in Oakland, California, was currently evaluating a SensorMedics product to "replace" an eight-month old Medical Graphics product "due to chronic down time." See Decl. of Terry Robinson, Exh., at fifth unnumbered page. Dr. Cayton learned of this memorandum in August of 1994 and objected to the use of his name. Aff. of Dr. Revels Cayton, ¶ 2. Whereas it is true that Dr. Cayton had spoken with a SensorMedics sales representative and had agreed to try a SensorMedics system for a period of time at no cost, he avers that he did not say anything negative about Medical Graphics.[1] Id. ¶ 4. Dr. Cayton demanded and received a letter of apology from the sales representative with whom he had dealt. Id. ¶ 5 and Exh.

Plaintiff has identified other statements by SensorMedics relating to performance issues such as the tendency of Medical Graphics' pneumotach to lose its calibration if reused and to be affected by temperature and humidity. Aff. of Dr. David Nielsen, ¶ 5. A SensorMedics sales representative also represented to a prospective customer that Medical Graphics' gas validator would not perform to the standards suggested by Medical Graphics and that Medical Graphics had ineffectively copied Dr. Wasserman's gas validator. Id., ¶ 6. Medical Graphics contends that these statements were false. Kapsen Aff., ¶ 9. Specifically, Medical Graphics contends that its gas validator is manufactured

to Dr. Wasserman's patented specifications, and Dr. Wasserman in fact uses the Medical Graphics gas validator. Id., ¶ 10. The SensorMedics sales representative involved denies making these representations. Decl. of Don Sievers, ¶¶ 5, 6.

Plaintiff also complains of SensorMedics' statements relating to cost issues such as those found in the documents attached to a letter from Scott Minnich, a sales representative for SensorMedics, to David Best at Summersville Memorial Hospital. Medical Graphics contends that other allegedly false cost comparisons are found in the materials sent by Bob Messmer of SensorMedics to Dr. Michael Davis of the Doctors' Hospital in Manteca, California. Aff. of Dale Knox, Exh. A.

## D. The ECRI Alert

Plaintiff also complains that SensorMedics has distributed false or misleading documents to potential customers, including a memorandum or "alert" which appears to, but does not, originate from a non-profit health services research organization called the Emergency Care Research Institute ("ECRI"). ECRI distributes information on medical devices to thousands of hospitals. Aff. of Ronni P. Solomon, ¶ 1.

The "alert" came to the facsimile machines of both the bio-medical and pulmonary departments of a hospital in Long Island, New York at a time when the hospital was considering whether to buy equipment from either SensorMedics or Medical Graphics. Decl. of Ira Bauer, ¶ 4. The "alert" was also shown to a hospital administrator after she had told a SensorMedics sales representative that her hospital had decided to purchase Medical Graphics equipment. Aff. of Marie Easterling, ¶¶ 2, 3. A sales representative from SensorMedics left a copy of the "alert" with the receptionist of the Marshfield Clinic in Wisconsin following a sales call. Decl. of Larry Sternitzky, ¶ 3. A copy of the "alert"

---

1. The SensorMedics sales representative involved in handling Dr. Cayton's account stated in his sworn declaration that he was initially contacted by someone whom he understood to be Dr. Cayton's office manager. Decl. of Robert Messmer, ¶ 2. The office manager told Messmer that they had been experiencing "down time" with their Medical Graphics equipment and described for Messmer the problems they had experienced. Id. These statements were later confirmed by the exercise technician at Dr. Cayton's office. Id., ¶ 3. Messmer also recalled that Dr. Cayton mentioned the problems he had experienced with Medical Graphics equipment. Id., ¶ 4.

was shown to a potential customer while on a tour of SensorMedics' California facilities. Decl. of Scott Rifkin, ¶ 3. Another SensorMedics sales representative stated to a potential customer that ECRI had tested the pneumotach and had found problems with it.[2] Aff. of David Nielsen, ¶ 4.

Plaintiff contends the document has been manufactured by SensorMedics and that the contents of the document are in fact an unverified report of an incident which allegedly occurred on or about August of 1993 involving a Medical Graphics product.[3] Kapsen Aff., ¶ 7. A marketing manager for SensorMedics declares that he received the incident report from Michael Collins of Natividad Medical Center, who in turn had obtained it from Al deRichemond at ECRI. Decl. of Alex Stenzler, ¶ 2. Stenzler admits that, prior to sending the report to the sales representatives in a marketing flash, he cut and pasted the report onto the facsimile cover page that deRichemond had used to transmit the report to Collins. Id., ¶ 2 and Exh.

Plaintiff contends that the "ECRI alert" has caused confusion in the marketplace in that actual and potential customers have contacted Medical Graphics to determine whether the report is genuine. In early August of 1994, the vice president of legal affairs for ECRI became aware that SensorMedics had been distributing a memorandum ostensibly on ECRI facsimile letterhead. Solomon Aff. ¶ 2. When she learned of SensorMedics' use of the ECRI name on that document, Solomon wrote to SensorMedics demanding that they stop. Id. at ¶ 4 & Exh. B.

SensorMedics responds that the ECRI "alert" was not intended for distribution. Upon receiving the letter from Solomon, SensorMedics promptly told its sales force to stop any further distribution of the document. Aff. of Jon Swierzewski, Exh. F.

**E. The Cost-per-test Comparison Chart**

Plaintiff also complains of an adulterated chart, which bears the Medical Graphics registered trademark, that showed Medical Graphics' cost-per-test to be higher than SensorMedics' for certain cardiopulmonary tests. *Compare* Decl. of Michael Fussell, Exh. A *with Id.*, Exh. B. SensorMedics has acknowledged that it superimposed its cost figures for those procedures over the "Other Competitors" column on a cost-per-test chart created by Medical Graphics. Decl. of Larry Murdoch, ¶ 2. A sales representative for Medical Graphics obtained a copy of the altered comparison chart which was attached to a letter from a SensorMedics sales representative to a potential customer. Decl. of Michael Fussell, ¶ 2. SensorMedics contends that the chart was part of a marketing flash and was not intended for distribution; SensorMedics avers that its sales personnel have been directed not to distribute the chart. Ross. Decl. ¶ 7.

**F. The University of California–Davis ("UC–Davis") Letter**

Following a sales contract between SensorMedics and UC–Davis Medical Center's Pulmonary Services Department, SensorMedics' vice president in charge of sales requested a letter from a nurse in the Pulmonary Services unit, William Volz, explaining why that unit was switching from Medical Graphics equipment to SensorMedics equipment. The letter was written on UC–Davis letterhead. SensorMedics asserts that the UC–Davis Respiratory Therapy department also agreed to serve as a reference for telephone and written inquiries. Ross. Decl. ¶ 8. Medical Graphics informed the Director of Hospital and Clinics for UC–Davis Medical Center that it believed the university's methodology was flawed and asked it to stop SensorMedics from improperly using the letter. Kapsen Aff., Exh. C. On April 8, 1994, a business contracts officer for UC–Davis demanded that SensorMedics stop using the Volz letter because it constituted an unauthorized use of the name "University of California" and a misuse of the employee's letter. Kapsen Aff., Exh. D. Following receipt of

---

2. The sales representative involved in this incident denies making such a representation to Dr. Nielsen. Decl. of Don Sievers, ¶ 3.

3. Medical Graphics states that it was required to report the incident to the FDA; it was later determined that the hospital involved in the incident had mis-used the Medical Graphics product. Kapsen Aff., ¶ 7.

the University's letter, SensorMedics directed its sales and marketing personnel to stop use of the letter.[4]  Ross. Decl., ¶ 8.

### G.  The Current Litigation

Plaintiff commenced this action, alleging claims of patent infringement, common law unfair competition, violations of the Lanham Act and the Minnesota Deceptive Trade Practices Act ("the MDTPA"), tortious interference with present and prospective contractual relationships, product disparagement, and defamation.  By its present motion, Medical Graphics seeks an injunction barring SensorMedics from

(a) Creating, using, distributing or referencing in any way any false or misleading document concerning the Plaintiff or the Plaintiff's products, including, but not limited to, the "ECRI letter," the "University of California at Davis letter" and the "MedGraphics cost per test document"; and

(b) Stating, communicating, or in any way using any false or misleading statement concerning the Plaintiff or any of the Plaintiff's products.

For the reasons set forth below, the Court will deny plaintiff's motion.

### Analysis

■ The grant of preliminary injunctive relief is within the discretion of the district court and involves consideration of four factors: the probability that the movant will succeed on the merits; the threat of irreparable harm to the movant; the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; and the public interest. *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 485–86 (8th Cir.1993) (citing *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)).  No single factor is dispositive; the district court must consider all of the factors to determine whether the balance

weighs toward granting the injunction.  *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 988 F.2d 61, 64 (8th Cir.1993).

Defendant has characterized plaintiff's motion for a preliminary injunction as an attempt to prevent SensorMedics from challenging Medical Graphics' product claims. SensorMedics asserts that the motion with respect to the documents it has distributed is moot because it is based upon incidents that have long since ceased.  SensorMedics also argues that plaintiff has failed to satisfy the *Dataphase* factors with respect to the alleged representations.  Finally, defendant contends that Medical Graphics has failed to identify what future conduct it wants enjoined, thus requesting relief that is overly broad, impermissibly vague and unmanageable.  The Court will address the mootness issue first.

### I.  Mootness

■ Defendant argues that the preliminary injunction motion is moot in a jurisdictional sense.  The Article III mootness doctrine is, in essence, " 'the doctrine of standing in a time frame.  The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).' " *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980) (quoting Henry Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973)). In *County of Los Angeles v. Davis*, the Supreme Court held that a case or controversy may become moot when "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur ... and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (internal citations and quotations omitted).  As the Supreme Court has noted, the burden of demonstrating the mootness of a case or controversy is onerous.  *Id.*

---

4. The Court notes that in early August of 1994, Dr. Terry Robinson, a pediatric pulmonary fellow at Stanford Medical Center, received a letter from a SensorMedics sales representative which contained a paragraph summary of the Volz letter and states that Volz "would be happy to talk to you about [UC–Davis Medical Center's] findings."  Decl. of Terry Robinson, Exh. at third unnumbered page.

The matter before this Court is a motion for temporary injunctive relief pending a determination of the legality of the defendant's conduct. The defendant has adduced evidence that it has ceased distribution of the cost comparison brochure and the ECRI and UC–Davis letters; SensorMedics has also pointed to a lack of evidence to support a conclusion that defendant will return to its old ways. Assuming *arguendo* that such a showing would suffice to meet the first prong of the *Davis* standard, SensorMedics has failed to address the second prong, whether the effects of the alleged violation have been "completely and irrevocably eradicated."

As the Supreme Court has observed, however,

> ... a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. Such abandonment is an important factor bearing on the question whether a court *should* exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power.

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152 (1982) (emphasis added). This Court, confronting a similar argument that conduct which the movant was seeking to enjoin had ceased, ruled that the movant's main argument for temporary injunctive relief—the threat of irreparable harm—had been rendered "essentially moot." *Sanborn Mfg. v. Campbell–Hausfeld/Scott Fetzer Co.*, 828 F.Supp. 652, 655 (D.Minn.1992), *aff'd* 997 F.2d 484 (8th Cir.1993). In the present case, the undisputed evidence in the record shows that SensorMedics has ceased to distribute the documents complained of. The record in fact suggests that, if SensorMedics were to resume distributing the ECRI and UC–Davis letters, it would face lawsuits from those entities. Plaintiff here has sought an injunction to prevent future harm to its goodwill and reputation during the pendency of this lawsuit. Nothing before the Court suggests that this voluntary cessation will fail to meet Medical Graphics' concerns. *See id.*

Accordingly, the Court rules that, whereas the defendant's contention that plaintiff's motion is "moot in a jurisdictional sense" is flawed and its reliance on *Davis* and *United States v. W.T. Grant Co.*, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953), is misplaced, SensorMedics' argument that plaintiff's motion is "essentially moot" with respect to the documents described above in parts D through F of the Background section, *supra*, is meritorious. As a result, the Court concludes that the *Dataphase* factor of threat of irreparable harm tips in favor of the nonmovant with respect to the documents Medical Graphics has specifically identified.

## II. The Dataphase factors

### A. Likelihood of success on the merits.

Plaintiff states that SensorMedics' actions clearly violate both the Lanham Act and the MDTPA, found at counts II and III of Medical Graphics' complaint. Minnesota federal district courts have found that "the Minnesota Deceptive Trade Practices Act mirrors the Lanham Act" and thus use the same analysis to evaluate false advertising claims that are made simultaneously under the federal and state statutes. *See Multi–Tech Sys., Inc. v. Hayes Microcomputer Prods., Inc.*, 800 F.Supp. 825, 847 (D.Minn.1992), *appeal dismissed* 988 F.2d 130 (Fed.Cir.1993) (table); *Woodroast Sys., Inc. v. Restaurants Unlimited, Inc.*, 793 F.Supp. 906, 917 (D.Minn. 1992). Both statutes provide that a plaintiff may seek injunctive relief. 15 U.S.C. § 1116(a) (1988); Minn.Stat. § 325D.45 subd. 1 (1992).

To establish a violation of section 43(a) of the Lanham Act, Medical Graphics must demonstrate the following:

(1) that SensorMedics made false or misleading statements about its own products or Medical Graphics' products in its commercial advertising or promotion;

(2) that those statements actually deceived or have the tendency to deceive a substantial segment of their audience;

(3) that such deception is material because it is likely to influence buying decisions;

(4) that the advertised goods travelled in interstate commerce; and

(5) that Medical Graphics has been or is likely to be injured as a direct result of those activities either by direct diversion of sales from itself to SensorMedics or by injury to the good will its products enjoy with the buying public.

*See Alternative Pioneering Sys. v. Direct Innovative Prods.*, 822 F.Supp. 1437, 1442 (D.Minn.1993); *Multi–Tech Sys.*, 800 F.Supp. at 845 (citing *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 964 (D.C.Cir.1990); *Cook, Perkiss & Liehe, Inc. v. Northern Calif. Collection Serv.*, 911 F.2d 242, 244 (9th Cir.1990)). SensorMedics asserts that plaintiff has failed to demonstrate a likelihood of success on the merits with respect to all but the fourth essential element. The Court will first resolve the defendant's threshold contention that many of the allegations fall outside the reach of the Lanham Act.

### * False or misleading statements in *commercial advertising or promotion*

■ SensorMedics asserts that most if not all of the statements plaintiff complains of fall outside the scope of the Lanham Act because they do not constitute "commercial advertising or promotion." The statements which the Court has described in Subsections A, B, and C of the Background section, *supra*, are, SensorMedics argues, isolated incidents in which a sales representative allegedly made a statement, either orally or by letter, to a potential customer. The defendant contends that these statements are too sporadic to constitute "advertising or promotion."

The conduct Medical Graphics has focussed on in its moving papers clearly does not fall within the boundaries of a "traditional advertising campaign." The United States District Court for the Southern District of New York has recently explored the few cases that have construed the meaning of the term "commercial advertising or promotion." *Gordon & Breach Science Publishers S.A. v. American Inst. of Physics*, 859 F.Supp. 1521, 1534–36 (S.D.N.Y.1994); *see also National Artists Mgmt. Co. v. Weaving*, 769 F.Supp. 1224 (S.D.N.Y.1991). The *Gordon & Breach* court identified the following four factors as typifying "commercial advertising or promotion":

(1) the representations must be commercial speech;

(2) they must be made by a defendant who is in commercial competition with the plaintiff;

(3) they must be made for the purpose of influencing consumers to buy defendant's goods or services; and

(4) they must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Gordon & Breach*, at 1536. Defendant's argument focusses on the fourth factor, the extent to which the representations were disseminated. Both "advertising" and "promotion," terms not specifically defined in the Lanham Act, include a notion of the *public* dissemination of information. *American Needle & Novelty, Inc. v. Drew Pearson Marketing, Inc.*, 820 F.Supp. 1072, 1077–78 (N.D.Ill.1993). "The level of circulation required to constitute advertising and promotion will vary from industry to industry and from case to case." *Id.* at 1078.

Defendant asserts, and plaintiff does not dispute, that the potential market for the products at issue here is large. Ross. Decl., ¶ 2. The complained-of representations consist, for the most part, of statements made by one of a handful of sales representatives to an individual potential customer. One Medical Graphics sales representative reports that he has received numerous questions about his company's relationship with the FDA. He has averred that he "believes" that such inquiries are the result of defendants' actions, yet it is clear that he is merely surmising and lacks first-hand knowledge. Although plaintiff argues that there may be many others to whom alleged misstatements were made, the Court notes that the burden of establishing entitlement to a preliminary injunction is on Medical Graphics. The Court concludes that, given the nature of the industry, the actions described in parts A through C of the Background section, *supra*, would not be actionable as "commercial advertising or promotion." Hence, plaintiff has

failed to establish a likelihood of success under the Lanham Act for those statements, which constitute a substantial part of the plaintiff's grievances. The Court therefore determines that the first *Dataphase* factor tips in favor of the non-movant.

### B. Threat of irreparable harm

■ As the Court concluded above, those actions which may have occurred with sufficient frequency to constitute "commercial advertising or promotion"—the distribution of the ECRI and UC–Davis letters and the use of the adulterated Medical Graphics' cost comparison chart—have now ceased. *See, supra,* section I. Medical Graphics contends that the highly aggressive and competitive attitude which SensorMedics has fostered among its sales and marketing personnel will guarantee that similar misconduct will happen in the future. Plaintiff also argues that SensorMedics has established a pattern of engaging in unethical conduct which it ceases only when caught, pointing to the ECRI and UC–Davis letters.

Although the evidence indicates that the market for cardiopulmonary testing products is clearly very competitive, the Court is not satisfied that the record supports a conclusion that SensorMedics "improper" use of documents will recur and thus pose a *future* threat to plaintiff's goodwill or reputation. The plaintiff having failed to satisfy its burden on this factor, the Court concludes that this factor tips in favor of the nonmovant.

### C. Balancing the hardships to the movant and non-movant

Plaintiff argues that it is extremely important in the health services industry to have a reputation for accuracy and reliability. Plaintiff contends that there is no real hardship to defendant because Medical Graphics is not seeking to prevent SensorMedics from selling its products. Plaintiff merely wants to bring a halt to the complained of conduct. Defendant contends that there would be no harm to plaintiff in not granting an injunction because the conduct complained of has stopped and any injury arising from it can be adequately compensated for with a money judgment. On the other hand, SensorMedics argues, an injunction would impair its ability to compete actively with Medical Graphics. The Court concludes that the balance of harms does not tip decidedly in favor of the movant; at best, this *Dataphase* factor is neutral or favors the nonmovant slightly.

### D. The public interest

■ Consumers have an fundamental interest in not being subjected to deceptive or confusing advertising so that they can accurately assess the quality of a product and choose a product that is in accordance with their preference; the public also has an interest in fostering open and fair competition. *Alternative Pioneering,* 822 F.Supp. at 1444–45. The Court concludes that, in light of the Court's assessment of the other *Dataphase* factors, a preliminary injunction would have the effect of inhibiting, rather than promoting, open competition. Accordingly, the Court finds that this factor tips in favor of the nonmovant.

## III. Specificity

■ Rule 65(d) of the Federal Rules of Civil Procedure requires that an order granting an injunction "shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." F.R.Civ.P. 65(d); *see Licata & Co., Inc. v. Goldberg,* 812 F.Supp. 403, 405 (S.D.N.Y.1993). The Court has determined that the distribution of documents has voluntarily ceased; thus those specific acts described in the proposed order do not need to be enjoined. Upon a review of the remainder of the plaintiff's proposed order, the Court concludes that plaintiff has failed to identify with the requisite specificity what conduct should be enjoined.

Medical Graphics' proposed order seeks to enjoin any creation, use, distribution or referencing of "any false or misleading document concerning the Plaintiff or the Plaintiff's products." Without identifying the document, there is no way for the Court to determine whether plaintiff has a likelihood of success in establishing that it is "false or misleading" under the Lanham Act. Similarly, plaintiff seeks to enjoin SensorMedics

from "stating, communicating, or in any way using any false or misleading statement concerning the Plaintiff or any of the Plaintiff's products." Again, the conduct to be enjoined is not adequately identified and the Court lacks any basis for determining whether such statements would run afoul of the Lanham Act. The Court concludes, therefore, that the request for preliminary injunctive relief presently before it lacks the necessary specificity.

### Conclusion

Based on the foregoing, and all the files, records and proceedings herein, **IT IS ORDERED** that Plaintiff's Motion for a Preliminary Injunction (Doc. No. ) is **DENIED.**[5]

---

5. The foregoing Memorandum Opinion and Order will constitute the Court's findings of fact and conclusions of law in accordance with the requirements of Rule 52(a) of the Federal Rules of Civil Procedure.