**ELLISON EDUCATIONAL EQUIP- MENT, INC., a California cor- poration, Plaintiff,**

v.

**TEKSERVICES, INC., d/b/a Accu–Cut Systems, a Nebraska corporation, Defendant.**

No. 8:CV94–00350.

United States District Court, D. Nebraska.

April 12, 1995.

Gerald L. Friedrichsen, William J. Riley, Fitzgerald, Schorr Law Firm, Omaha, NE, James E. Hawes, Kimberly V. Fogarty, Hawes, Fischer Law Firm, Newport Beach, CA, William E. Levin, William Levin, Newport Beach, CA, for Ellison Educational Equipment, Inc.

Michael A. Nelsen, Steven D. Schaal, Dixon, Dixon Law Firm, Omaha, NE, Daniel M. Cislo, Cislo, Thomas Law Firm, Santa Monica, CA, for Tek Industries, Inc.

Michael A. Nelsen, Dixon, Dixon Law Firm, Omaha, NE, for Keefe L. Lodwig.

## MEMORANDUM OPINION

STROM, District Judge.

This matter is before the Court on plaintiff's motion for preliminary injunction (Vol. 4, Filing No. 17). Plaintiff alleges that defendant has engaged in unfair competition and copyright infringement. The Court conducted a hearing on January 30–February 3, 1995, and continued on March 6, 1995. After careful consideration of the evidence, the briefs and the applicable law, the Court makes the following findings of fact and conclusions of law pursuant to Rule 65(d) of the Federal Rules of Civil Procedure.

### FACTUAL BACKGROUND AND PARTIES

#### (a) Plaintiff

Ellison Educational Equipment, Inc. ("Ellison"), is a family owned business based in California that was founded in 1977 by LaDorna and Robert Eichenberg. Ellison manufactures two versions of the "Ellison Letter Machine," a hand lever operated press machine which uses dies to stamp letters and figures out of various materials including bond and construction paper, felt, posterboard, pop-up sponge, foam, etc. Ellison customers consist primarily of schools and educators who incorporate the cut out letters and figures in classroom instruction and design of bulletin boards. Ellison also manufactures dies and related items. The dies are constructed of a steel-ruled blade surrounded by foam rubber and embedded in a piece of plywood. The die operates essentially as a cookie cutter when placed in the machine and force is applied with the hand lever. Ellison began its business by marketing the "Original" letter machine which utilized 5" × 6" dies. In 1991, however, Ellison began to market a larger "XL" letter machine to accommodate larger dies.

#### (b) Defendant

Tekservices, Inc., d/b/a Accu–Cut Systems ("Accu–Cut"), located in Fremont, Nebraska, also manufactures a die-cutting machine, dies and related items for use in educational settings. Founded in 1989 by brothers-in-law Jim Nichols and Steve Nabity, Accu–Cut endeavored to create a niche in the education market by designing a machine which would cut out larger shapes than the original Ellison Letter Machine. The Accu–Cut machine operates quite differently than the Ellison machines. Its dies are constructed similarly to those of Ellison.[1] The operator places paper or other material on to a die which is placed plywood side down into a shallow tray. The tray is placed on a bed of rollers and cranked underneath a center roller elevated slightly above the bed of rollers. The die cuts the material as the blade comes into contact with the roller. In 1994, Accu–Cut phased out its original machine and began to exclusively market the "Mark IV Roller Cutting System."

#### (c) The Previous Litigation

Ellison filed a lawsuit in this Court in 1990 alleging copyright infringement, trademark

---

1. No claims are made in this action based on the similarity in the construction of the dies.

infringement, false designation of origin and unfair competition. This Court granted plaintiff's motion for preliminary injunction in part and denied it in part. *Ellison Educ. Equip., Inc. v. Accu–Cut Sys., Inc.,* 769 F.Supp. 1090 (D.Neb.1991). Pending plaintiff's appeal of this Court's decision, the parties negotiated a settlement. Nevertheless, plaintiff alleges that since the settlement, defendant has engaged in much of the same conduct which precipitated the first litigation. Consequently, plaintiff filed the present lawsuit in March, 1994.

### (d) The Present Litigation

The present lawsuit was originally filed in the United States District Court for the Central District of California. Upon defendant's motion, the case was transferred to this Court (Vol. 4, Filing No. 1). In its motion for preliminary injunction plaintiff claims that defendant has engaged in unfair competition in violation of section 43(a) of the Lanham Act [2] and copyright infringement in violation of the Copyright Act.[3] The Court will address each of these claims in turn.

## DISCUSSION

### (a) Standard for Preliminary Injunctive Relief

■■■ The issuance of preliminary injunctions is governed by *Dataphase Sys., Inc. v. C L Systems, Inc.,* 640 F.2d 109 (8th Cir. 1981) (en banc). In determining whether a preliminary injunction should issue, the United States Court of Appeals for the Eighth Circuit stated that the following factors must be considered:

(1) The threat of irreparable harm to the movant;

(2) The state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant;

(3) The probability that movant will succeed on the merits; and

(4) The public interest.

*Id.* at 113. No single factor in itself is dispositive; all of the factors must be considered to determine whether they weigh toward granting an injunction. The burden of establishing the propriety of a preliminary injunction is on the movant. *Baker Elec. Co-op., Inc. v. Chaske,* 28 F.3d 1466, 1472 (8th Cir.1994).

### (b) Unfair Competition Claims

Plaintiff alleges that defendant has engaged in multiple acts of unfair competition in violation of section 43(a) of the Lanham Act. The alleged violations fall generally into the categories of (1) false statements in defendant's advertising or other commercial promotion regarding Ellison, Accu–Cut, and each company's products; (2) representations which cause confusion regarding the affiliation, association or connection between Accu–Cut and Ellison; and (3) imitation of plaintiff's trade dress. The Court will analyze plaintiff's unfair competition claims within the framework of these three categories.

### (i) False Advertising Claims

■■■ Section 43(a) of the Lanham Act creates a cause of action for any false description or representation of a product.[4] To prevail on a § 43(a) false advertising claim, plaintiff must plead and prove the following: (1) that defendant has made false or misleading statements regarding its own or Ellison's

---

2. 15 U.S.C. § 1125(a).

3. 17 U.S.C. § 502.

4. Section 43(a) provides:
   (a)(1) Any person who, on or in connection with any goods or services … uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
   (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
   (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
   shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.
   15 U.S.C. § 1125.

products; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material, *i.e.* it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales or loss of goodwill. *Ditri v. Coldwell Banker,* 954 F.2d 869, 872 (9th Cir.1992); *Medical Graphics Corp. v. SensorMedics Corp.,* 872 F.Supp. 643, 649–50 (D.Minn. 1994). Regarding the first of these elements, plaintiff must demonstrate that the advertisement is either literally false or, if literally true, is likely to mislead or confuse customers. *Castrol, Inc. v. Quaker State Corp.,* 977 F.2d 57, 62 (2d Cir.1992). Mere puffing, however is not actionable under § 43(a). *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.,* 911 F.2d 242, 245–46 (9th Cir.1990); *U.S. Healthcare Inc. v. Blue Cross of Greater Philadelphia,* 898 F.2d 914, 922 (3d Cir. 1990).

Plaintiff complains about numerous representations made by defendant in various advertisements and promotions. Examples of these representations include: that the Accu–Cut Mark IV Roller Cutting System is the "finest" or "most flexible" or "most versatile" die cutting system available today;" that the Accu–Cut Mark IV is "completely compatible with every die cutting system available today" specifically referencing the Ellison Letter Machine; that Accu–Cut dies have been tested and will work in an Ellison Letter Machine without damaging either the die or the Ellison machine; that "no other machine is as fast or as flexible" as the Accu–Cut machine; that Accu–Cut's "world-wide sales are skyrocketing; that the Accu–Cut machine does not require any adjustment; and that Accu–Cut fills orders quickly.

In addition, plaintiff complains of Accu–Cut's use of an advertisement referred to as the "Brand X" brochure (Exhibit No. 457). In this brochure, Accu–Cut compares its machine to the machine of "Brand X" which Accu–Cut admits specifically references Elli-

son. The brochure lists a number of tasks or features such as "Cuts 25 Jumbo shapes per minute." Under "Accu–Cut" a "x" appears for each task/feature whereas no "x" appears underneath "Brand X" with the obvious implication that the Ellison machine is unable to perform these tasks. Jim Nichols admitted that it did not base the "Brand X" brochure on any head-to-head comparisons between the Accu–Cut and Ellison machines. At the time that Accu–Cut issued this brochure, it was marketing its original machine. Accu–Cut discontinued using the "Brand X" brochure sometime in 1993.

There is no dispute that the speed, quality, versatility and flexibility of these machines as well as customer service are important features which influence purchasing decisions. Accordingly, any representations made about these features are material. Similarly, there is no dispute that the advertised goods traveled in interstate commerce and that plaintiff is likely to suffer declining sales as a result. Therefore, the Court focuses on the first two elements which plaintiff must prove, namely (1) whether defendant's representations are false or if literally true, are likely to mislead and confuse customers; and (2) whether there is actual deception or a tendency to deceive a substantial portion of the intended audience. Relevant to these issues, defendant demonstrated its machines at the hearing. Using both its original and Mark IV machines, defendant cut various letters and shapes out of several materials with Ellison and Accu–Cut dies.

■ Defendant advertises that the Accu–Cut system is "completely compatible with every die cutting system available today. That means if you already own a die cutting system, including the **Ellison Letter Machine,**[5] you don't need to start all over to use Accu–Cut." At the hearing, defendant clearly demonstrated that Ellison dies can be used in both the original and Mark IV Accu–Cut machines with some minor accommodation. First, the operator must place the Ellison die

5. Pursuant to the settlement agreement of the previous litigation, defendant agreed to use a disclaimer whenever it used Ellison's name or mark in its advertising. While there was some evidence that Accu–Cut has not completely complied with that provision, plaintiff has not alleged a breach of the settlement agreement and that issue is not before the Court.

rubber side up in an Accu–Cut machine.[6] Second, an operator may have to rotate an Ellison die slightly so that it sits at an angle on the bed of rollers. This is because if a die has a blade which runs parallel to the center roller, the Accu–Cut machine tends not to cut that portion of the material. The largest Ellison "XL" dies cannot be angled on the original Accu–Cut machine due to its width. However, the Accu–Cut Mark IV machine is wider and can accommodate angled Ellison "XL" dies. Plaintiff argues that defendant's representations that Ellison dies are "completely compatible" with Accu–Cut machines are therefore false and violate § 43(a).

By a strict interpretation, the Accu–Cut system is not "completely compatible" with every Ellison die. However, the range of "incompatibility" is limited to (1) Ellison XL dies (2) which have a portion of blade running parallel to the center roller (3) of the original Accu–Cut machine. Considering that all future Accu–Cut sales will be of the Mark IV machine which can accommodate angled Ellison XL dies, the range of incompatibility will continually grow more narrow. Thus, while the "completely compatible" representation may not be literally true, it is not likely to mislead or confuse customers. In addition, the Court received no evidence establishing that the "completely compatible" advertisement actually deceived any customer or has a tendency to deceive a substantial portion of the intended audience. Accordingly, the Court concludes that plaintiff has failed to demonstrate that defendant's "completely compatible" representation violates § 43(a).

■ The Court makes a similar finding regarding defendant's other representations about the speed, flexibility and versatility of its machines. Defendant offered demonstrations to substantiate these claims. However, the literal truth or falsity of these claims need not be decided to resolve this issue. Instead, the Court concludes that such representations constitute mere puffing and are not actionable under § 43(a).

■ The only evidence refuting any representations made by Accu–Cut regarding its customer service was the testimony of Lisa Corcoran, Ellison's president. Ms. Corcoran testified that when she ordered an Accu–Cut machine, it was late in arriving. The Court concludes that this evidence is insufficient to support a § 43(a) claim.

■ Regarding the advertisement that "world-wide sales are skyrocketing," Accu–Cut president, Jim Nichols, testified that the defendant has had sales in six countries. Although the amount of sales and the countries were not disclosed, the Court again concludes that such representations constitute mere puffing and are not actionable under § 43(a).

■ The original Accu–Cut machine has adjustment knobs which increase or decrease the pressure applied as the die cuts through material. The operator adjusts the pressure depending on the nature of the material, the number of sheets to be cut, and the intricacy of the die used. However, defendant no longer manufactures the original machine and the Mark IV requires no adjustment. Defendant's advertisements regarding the absence of adjustment relate solely to the new Mark IV. A purchaser of an original Accu–Cut machine knows that it requires adjustment and cannot be misled by the advertisements for the new Mark IV. Accordingly, the Court finds that defendant's representations regarding the lack of adjustment is true and is unlikely to mislead or confuse customers.

■ Plaintiff's complaints about Accu–Cut's "Brand X" brochure constitute its most viable § 43(a) false advertising claim and would justify injunctive relief except for the fact that defendant voluntarily ceased using the "Brand X" brochure sometime in 1993. Therefore, this issue is moot for purposes of a preliminary injunction since the "Brand X" brochure no longer poses a threat of irreparable harm to plaintiff.

The Court concludes that plaintiff is unable to present a prima facie case of false adver-

---

**6.** In an Ellison machine, the die is placed rubber side down. Ellison offers four sizes of dies: Tiny, Small, Large, and Extra Large ("XL").

tising in violation of § 43(a). Defendant's representations are literally true and not likely to mislead or confuse customers. In addition, plaintiff presented no evidence of actual deception or a tendency to deceive a substantial portion of the intended audience. Finally, the Court concludes that defendant's advertising constitutes mere puffing and is not actionable under § 43(a). Therefore, plaintiff cannot succeed on the merits. When considered with the other *Dataphase* factors, the Court determines that a preliminary injunction is inappropriate regarding plaintiff's false advertising claim.

### (ii) Representations Causing Confusion Regarding the Affiliation, Association or Connection Between Ellison and Accu–Cut

■ Ellison also complains that defendant has made representations which are likely to cause confusion or mistake regarding the affiliation, association or connection between Ellison and Accu–Cut in violation of § 43(a). 15 U.S.C. § 1125(a)(1)(A). Likelihood of confusion is the test for § 43(a) actions and plaintiff need not provide proof of actual confusion. *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.,* 30 F.3d 466, 473 (3rd Cir.1994).

■ Regarding this claim, Ellison presented evidence of particular instances of alleged confusion. Ellison trade show representatives testified that show attendees often make comments indicating confusion between the Ellison and Accu–Cut machines such as "we also have your roller machine;"[7] Ellison customers have returned Accu–Cut dies for repair; an Ellison customer ordered Ellison dies with "For Accu–Cut Dies" written on the check; and Ellison customers have attempted to redeem Accu–Cut discount coupons with Ellison purchases or have returned other Accu–Cut promotion materials to Ellison. Ellison also alleges in its brief that it has received comments to the effect that

Accu–Cut and Ellison have merged, are the same company or are affiliated in some way. However, there was no evidence that Accu–Cut has made any representations of this sort. Finally, Ellison complains that Jim Nichols told Martha McDoniel, a covert Ellison agent,[8] that Ellison and Accu–Cut dies are "exactly the same."

Plaintiff argues that these instances of actual confusion should be given great weight in the determination of whether defendant's actions are likely to cause confusion or mistake. Actual confusion is persuasive evidence of likelihood of confusion. However, such instances are not dispositive of the issue. As one court stated:

> Even though evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion it does not follow that any type or quantum of such evidence is entitled to significant weight in the determination. Where parties have been doing business in the same area for some time and where they have advertised extensively, isolated instances of actual confusion are not conclusive or entitled to great weight in the determination.

*Homeowners Group v. Home Mktg. Specialists,* 931 F.2d 1100, 1110 (6th Cir.1991). The degree of the actual confusion is an important factor to be considered in resolving this issue. *Id.* The evidence revealed that any instance of actual confusion was short-lived and easily corrected. Moreover, the Court finds that defendant's actions were not the cause of the confusion: "[T]he touchstone of a section 1125(a) unfair competition claim is whether *the defendant's actions* are 'likely to cause confusion.'" *Matrix Essentials v. Emporium Drug Mart,* 988 F.2d 587, 592 (5th Cir.1993) (emphasis supplied). Defendant has done nothing to create or cause confusion or mistake between Accu–Cut and Ellison. The Accu–Cut logo appears prominently on all of its machines, literature, trade

---

7. Jim Nichols also testified that show attendees occasionally approach the Accu–Cut booth believing it to be Ellison. Both parties testified that a short discussion with the attendee clarifies the confusion.

8. Ellison hired Martha McDoniel, a teacher from Austin, Texas, to approach the Accu–Cut booth at

a trade show in Dallas. Ms. McDoniel represented to Jim Nichols that she was comparison shopping between the Ellison and Accu–Cut machines. Over the course of four to five hours, Ms. McDoniel spoke to Mr. Nichols for about forty-five (45) minutes. The conversation was recorded with a concealed recording device.

show booth and the clothing of its representatives. Both Accu–Cut and Ellison actively advertise in the same market and some incidence of confusion is inevitable. However, the Court concludes that any confusion is due to customer error and not attributable to any action on the part of Accu–Cut. Accordingly, the Court concludes that plaintiff's evidence of instances of actual confusion is unpersuasive.

■ The only affirmative action on defendant's part to which plaintiff can point as causing confusion is Jim Nichol's comment to Martha McDoniel that the Accu–Cut and Ellison dies are "exactly the same." The Court has examined both Ellison and Accu–Cut dies. While there may be some engineering or materials differences between the dies, they appear to be identical from a functional standpoint. The Court concludes that the ordinary user of the dies would not be confused, mistaken or misled by Mr. Nichol's statement.

Accordingly, the Court finds that defendant has not made any representation which is likely to cause confusion regarding the association, affiliation or connection between Ellison and Accu–Cut. The Court concludes that plaintiff is unlikely to succeed on the merits of this claim and there is no threat of irreparable harm.

### (iii) Trade Dress Infringement

Plaintiff also asserts that defendant has infringed on plaintiff's trade dress by imitating the "black and chrome" color scheme of its machines and by mimicking the color shades used in its catalog.

■ Section 43(a) creates a cause of action for trade dress infringement. "The trade dress of a product is the total image of a product, the overall impression created, not the individual features." *Woodsmith Publishing Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990). To constitute protectible trade dress, plaintiff must prove: (1) that the trade dress is nonfunctional; (2) that the trade dress is either inherently distinctive or

has acquired secondary meaning; and (3) that imitation of the trade dress would create a likelihood of confusion in consumers' minds as to the origin or source of the product. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, ——, 120 L.Ed.2d 615, 624, 112 S.Ct. 2753, 2758 (1992).

The Original Ellison Letter machine consisted of a black and chrome press component and lever mounted onto a wooden base board. When Ellison introduced its XL machine in 1991, it also consisted of a black and chrome press component but was mounted on a black base. Beginning with its 1994–95 catalog, Ellison redesigned its Original machine to have the same black base as the XL.

■ The original Accu–Cut machine consisted of a white and blue base with wooden rollers and black adjustment knobs. The Mark IV machine consists of a black high density polyethylene base with polished aluminum columns supporting white rollers. Jim Nichols testified that when Accu–Cut designed and introduced the Mark IV in 1994, he knew of Ellison's XL color scheme, but was unaware that Ellison had decided to incorporate that color scheme into both the Original and XL Letter Machines.

■ Assuming that Ellison can prove that its trade dress is nonfunctional[9] and is either inherently distinctive or has acquired secondary meaning, the Court concludes that plaintiff is unable to prove that any alleged imitation would create a likelihood of confusion. Aside from some similarity in color, the Accu–Cut Mark IV and the Ellison machines appear completely different. The way in which the machines operate is readily apparent and makes them easily distinguishable. In addition, the stark white rollers and absence of a lever handle differentiate the Mark IV from the Ellison machine. Finally, the Accu–Cut logo appears prominently on the Mark IV. Considering these elements and the total image and overall impression created, the Mark IV color scheme is not likely to cause confusion in customers's minds over its origin or source. Plaintiff also

---

9. Regarding the functionality of the polyethylene base, Jim Nichols testified that its black color serves an important function in terms of appearance. The white base of the original machine would reveal grime and small scraps of paper easily giving the machine a dirty appearance. To alleviate this problem, Accu–Cut switched to a black base.

complains that Accu–Cut uses the same colors as Ellison in its catalog to designate shapes and letters. In its catalog, Ellison displays the cut out patterns of its dies by using purple, green, blue and red silhouettes. In past catalogs, Accu–Cut displayed their die cut out shapes with a black outline of the figure. In its most recent catalog, however, Accu–Cut uses blue silhouettes to display its former die shapes and red to designate its new shapes. Above each new shape, "NEW!" also appears in red.

In *Qualitex Co. v. Jacobson Products Co., Inc.*, —— U.S. ——, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995), the United States Supreme Court held that a color is protectible if "it can act as a symbol that distinguishes a firm's goods and identifies their source, without serving any other significant function." In the present case, the plaintiff's colors have not acquired this secondary meaning nor are they inherently distinctive. The product itself does not use these colors and they do not act as symbol for Ellison. Instead, the colors serve the function of displaying the cut out shapes of plaintiff's dies in its catalog. In addition, defendants use of blue and red in its catalog is not likely to confuse customers regarding the origin or source of the products. Therefore, plaintiff has failed to state a trade dress infringement claim regarding defendant's use of colors in its catalogs.

The Court concludes that plaintiff is unlikely to succeed on the merits of its trade dress infringement claims and there is little threat of irreparable harm.

### (c) Copyright Infringement

█ Plaintiff alleges that defendant has engaged in copyright infringement of the design of four Ellison dies, namely the candy cane, snake # 2,[10] popcorn and the Alamo. To prevail on the copyright infringement claim, plaintiff must prove: (1) its ownership of the copyright in these designs; (2) access by defendant to the designs; and (3) substantial similarity between the parties' designs. *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir.1987). There is no dispute that plaintiff has registered these designs with the Copyright office. In addition, Jim

Nichols admitted that he had access to the designs. Thus, the Court directs its attention to the substantial similarity element.

Only the expression of an idea is protectible and not the underlying idea. The question then is how similar must the parties' expressions be so that the copying is deemed to be of the protected expression and not the unprotected idea. Michael A. Epstein, *Modern Intellectual Property* 163 (2nd 1989). On this issue, Judge Learned Hand wrote:

> Obviously, no principle can be stated as to when an imitator has gone beyond copying the "idea," and has borrowed its "expression." Decisions must therefore inevitably be *ad hoc* ... [O]ne cannot say how far an imitator must depart from an undeviating reproduction to escape infringement. In deciding that question one should consider the use for which the design is intended, especially the scrutiny that observers will give to it as used.... However, the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same. That is enough; and indeed, it is all that can be said, unless protection against infringement is to be denied because of variants irrelevant to the purpose for which the design is intended.

*Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960). The Eighth Circuit Court of Appeals has developed a two-step analysis in the determination of substantial similarity: "There must be substantial similarity 'not only of the general ideas but of the expressions of those ideas as well.'" *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir.1987). First, the Court extrinsically analyzes the similarity of ideas focusing on objective similarities in the details of the works. If there is substantial similarity in the ideas, the Court evaluates the similarity of expression using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression. *Id.*

█ Applying this analysis, the Court finds that the defendant's design of the Alamo, the Popcorn and the Snake are substan-

---

10. Accu–Cut's version of the snake is named "py- thon" in its catalog.

tially similar to plaintiff's designs in terms of both idea and expression. There are multiple ways in which to depict each of these ideas. For example, in its depiction of the Alamo, plaintiff added, subtracted and altered certain features found in the physical structure of the Alamo. Defendant's depiction of the Alamo contains the same added or altered features and omits the same features as plaintiff's depiction. Similarly, defendant's design of a python closely resembles plaintiff's design of a snake in terms of formation of the coil, length relative to width and presence of a forked tongue. Finally, the defendant's popcorn design is identical to plaintiff's in its depiction of the box and relation of popcorn kernels to it. The result is that defendant's design is indistinguishable from plaintiff's to the ordinary observer. Accordingly, the Court finds that defendant has infringed on plaintiff's copyright of the popcorn, snake and Alamo designs.

However, plaintiff's candy cane design is not entitled to such protection. There are extremely limited ways in which to depict a candy cane and still be able to express the idea. Therefore, an attempt to copyright the expression of a candy cane is essentially an attempt to copyright the idea. Because plaintiff cannot appropriate the idea of a candy cane, the Court concludes that defendant has not engaged in copyright infringement of plaintiff's design.

Plaintiff has demonstrated a likelihood of success on the merits of its copyright infringement claim regarding its Alamo, popcorn and snake designs. Similarly, plaintiff has demonstrated a threat of irreparable harm. Balancing these factors against the burden an injunction will place on defendant and considering the public interest, the Court finds that plaintiff is entitled to a preliminary injunction prohibiting defendant from copying plaintiff's expression of those three designs. Because there is a strong likelihood of success on these claims, the bond required of plaintiff will be set at $1,000.

A separate order will be entered this date in accordance with this memorandum opinion.

## PRELIMINARY INJUNCTION

Pursuant to the memorandum opinion entered herein this date,

IT IS ORDERED:

1) Plaintiff's motion for preliminary injunction as to a false advertising claim is denied;

2) Plaintiff's motion for preliminary injunction as to the issue of confusion regarding the affiliation, association, or connection between Ellison and Accu–Cut is denied;

3) Plaintiff's motion for preliminary injunction as to the trade dress infringement claim is denied;

4) Plaintiff's motion for preliminary injunction as to copyright infringement is granted in part; defendant is prohibited from copying plaintiff's designs of the Alamo, popcorn and snake. Defendant is ordered to remove all references of its current designs of popcorn, Alamo and python dies from its catalogs, advertising, literature and any other promotion which (a) defendant currently has in its possession, including specifically but not limited to, defendant's most recent catalog already in print as of the effective date of this preliminary injunction, and (b) which defendant develops and utilizes from the date of this preliminary injunction forward. Defendant and its agents are prohibited from making any representations regarding these three designs in any oral or live promotion of its product from the effective date of this preliminary injunction forward, specifically including but not limited to promotions at trade shows, conventions and the like. Defendant is prohibited from selling to any customer any die of its current designs of popcorn, the Alamo, or the python designs from the effective date of this preliminary injunction forward.

5) Said injunction shall become effective upon the posting by plaintiff of a bond in the amount of $1,000.